UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

EDWARD GARZA,

                        Petitioner,

     v.

BRIAN WILLIAMS, *et al.,*

                     Respondents.

Case No. 2:18-cv-00995-GMN-BNW

ORDER

This represented habeas matter under 28 U.S.C. § 2254 by Petitioner Edward Garza ("Petitioner" or "Garza") comes before the Court on respondents' motion to dismiss (ECF No. 52) and petitioner's motion for discovery (ECF No. 44).

### Motion to Dismiss

### Timeliness and Relation Back

Respondents first seek the dismissal of Grounds 2 and 5(c) as untimely under the one-year federal limitation period in 28 U.S.C. § 2244(d).  The controlling issue presented by the briefing is whether these claims from Garza's counseled second amended petition relate back to a timely claim in his prior *pro se* amended petition.

A claim in an amended petition that is filed after the expiration of the one-year limitation period will be timely only if the claim relates back to a timely-filed claim pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, on the basis that the claim arises out of "the same conduct, transaction or occurrence" as the timely claim.  *Mayle v. Felix*, 545 U.S. 644 (2005).  In *Mayle*, the Supreme Court held that habeas claims in an amended petition do not arise out of "the same conduct, transaction or occurrence" as

1

prior timely claims merely because the claims all challenge the same trial, conviction or sentence.  545 U.S. at 655-64.  Rather, under the construction of the rule approved in *Mayle*, Rule 15(c) permits relation back of habeas claims asserted in an amended petition "only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes."  *Id.*, at 657.  In this regard, the reviewing court looks to "the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  A claim that merely adds "a new legal theory tied to the same operative facts as those initially alleged" will relate back and be timely.  *Id.*, at 659 & n.5.

In Grounds 2 and 5(c) in the counseled second amended petition, Garza alleges, factually, *inter alia*, that:  (1) there was a factual dispute at trial as to what happened after Nye County Sheriff's Deputies Danneker and Fancher arrived in separate vehicles at the home of Garza and Janice Lujan;  (2) Deputies Danneker and Fancher testified that Garza pointed a gun at Fancher who then shot at Garza fourteen times;  (3) Garza and Lujan testified that Fancher arrived in a panic, Garza was obeying police commands, and then Fancher opened fire and shot Garza three times; and (4) Detective Boruchowitz thereafter failed to preserve dashcam recordings from both patrol vehicles, with Boruchowitz claiming that there was no video from Danneker's dashcam and that the Fancher dashcam did not show the incident with Garza.  (ECF No. 40, at 9-11 & 25-26.)

In Ground 1 of the earlier *pro se* amended petition, Garza similarly alleged, factually, *inter alia*, that Detective Boruchowitz failed to preserve dashcam video from the two deputies' respective vehicles and that the recordings would have verified his version of what happened prior to the officer-involved shooting.  (*See* ECF No. 11, at 3-10.)

In Ground 2 of the second amended petition, Garza claims, legally, that he was denied rights to due process, a fair trial, and to present a defense in violation of the Fifth, Sixth and Fourteenth Amendments because the trial court did not give an adverse inference instruction to the jury due to the unpreserved audiovisual evidence.  (ECF No. 40, at 9 & 11.)  In Ground 5(c) of the pleading, Garza claims that he was denied effective

assistance of appellate counsel in violation of the Sixth and Fourteenth Amendments when counsel did not raise the above claim during the state direct appeal.  (*Id.*, at 25-27.)

In the *pro se* amended Ground 1, Garza claimed legally, based upon the above factual allegations, that he "was denied due process of law by the State's failure to preserve and/or disclose material evidence pursuant to Brady v. Maryland, in violation of" the Fifth, Sixth and Fourteenth Amendments. In Ground 6, he claimed that appellate counsel was ineffective for not raising, *inter alia,* Ground 1.  (ECF No. 11, at 3,10 & 49.)

The Court is persuaded that current Grounds 2 and 5(c) relate back to the earlier *pro se* claims.  The claims all are tied to a common core of operative facts – Detective Boruchowitz' failure to preserve alleged dashcam recordings from the police vehicles driven by Deputies Danneker and Fancher.  Current Grounds 2 and 5(c) present different legal theories than the legal theory presented in particular in prior Ground 1, but these different legal theories nonetheless are tied to a common core of operative facts.  The claims therefore relate back under Rule 15(c).  *See, e.g., Nguyen v. Curry*, 736 F.3d 1287, 1296-97 (9th Cir. 2013), *abrogated on other grounds by Davila v. Davis*, 137 S. Ct. 2058 (2017) (new IAC claim for failing to raise double jeopardy claim on appeal related back to earlier double jeopardy claim in original petition tied to a common core of operative facts).

The Court is not persuaded by respondents' arguments to the contrary. Respondents urge that while the claims share "some overlapping facts, they do not share a *common core of operative facts* because [in particular] Ground 2 . . . centers on the trial court's failure to give an instruction—a key operative fact not present in Ground 1 of his first amended petition."  (ECF No. 55, at 3, with emphasis in original.)  This argument misses the mark.  In *Nguyen*, the Ninth Circuit rejected a similar argument that relation back was precluded because the new claim was based on an allegedly key operative fact—the attorney's failure to raise the double jeopardy issue later on the direct appeal— that was not presented in the earlier substantive claim.  *See* 736 F.3d at 1297.  The relevant question is not whether the old claim requires proof of every single factual element, even an *arguendo* "key" element, required to establish the new claim.  Rather,

the relevant inquiry instead is whether the old and new claims are "tied" to a common core of operative facts.  The claims here are tied to a common core of operative facts, Boruchowitz' failure to preserve the alleged dashcam recordings.[1]

Respondents further urge that relation back is precluded because the current claims allegedly depend upon events separate in both time and type from the episodes raised in the earlier claim.  They maintain that this is so "because Ground 1 of [Garza's] first amended petition involves the *prosecutor's* failure to disclose evidence *before trial*, whereas [in particular] Ground 2 of his untimely petition involves the *trial court's* failure to give an instruction to jurors *during trial*."  (ECF No. 55, at 3, with emphasis in original.)  However, *Nguyen* instructs that "the 'time and type' language in *Mayle* refers not to the claims, or grounds for relief . . . [but, rather] . . . refers to *the facts that support those grounds*."  736 F.3d at 1297 (emphasis in original).  In *Nguyen*, the common core of facts was that the defendant had fully served a three-year concurrent sentence on a count when the state court thereafter resentenced him to twenty-five-years to life on that same count.  *Id.*  It did not matter that the ineffective-assistance claim required proof also of appellate counsel's failure to raise a claim challenging that resentencing later on direct appeal.  Here, again, the common core of operative facts is Boruchowitz' failure to preserve the alleged dashcam video.  It does not matter, for relation back under Rule 15(c), that Ground 2 is based also on the trial court's failure to give an instruction allegedly required by Boruchowitz' failure or that Ground 5(c) is based also on appellate counsel's failure to raise a challenge the trial court's failure to give the instruction allegedly required by Boruchowitz' failure.  All of the claims are tied to a common core of operative facts.[2]

Grounds 2 and 5(c) relate back and are timely.

---

[1]  The Court is not persuaded by respondents' reliance on *Black's Law Dictionary* in support of this argument.  (*See* ECF No. 55, at 3.)  The controlling law, and the specific principles for applying that controlling law, are delineated in *Mayle* and *Nguyen*, not a legal dictionary.

[2]  Respondents' reliance on *Alfaro v. Johnson*, 862 F.3d 1176 (9th Cir. 2017), is misplaced.  *Alfaro's* discussion of *Nguyen* and the panel's actual application of the principle discussed in the text is fully consistent with this Court's analysis.  *See* 862 F.3d at 1184 ("The barrier to relation back in [this] case is not the differing times at which [the] claims arose, or the different legal grounds upon which they rest.").  *See also Ross v. Williams*, 950 F.3d 1160, 1168 n.6 (9th Cir.) (*en banc*), *cert. denied*, 141 S.Ct. 840 (2020).

1   *Exhaustion*

2      Respondents contend that the same two grounds, Grounds 2 and 5(c), are not

3   exhausted.  The Court refers back to its description above of these two grounds.

4      Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court

5   remedies on a claim before presenting that claim to the federal courts.  To satisfy this

6   exhaustion requirement, the claim must have been fairly presented to the state courts

7   completely through to the highest state court level of review available.  *E.g., Peterson v.*

8   *Lampe*r*t*, 319 F.3d 1153, 1156 (9th Cir. 2003) (*en banc*); *Vang v. Nevada*, 329 F.3d 1069,

9   1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific federal

10  constitutional guarantee upon which he relies and must also state the facts that entitle

11  him to relief on that federal claim.  *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir.

12  2000).  That is, fair presentation requires that the petitioner present the state courts with

13  both the operative facts and the federal legal theory upon which the claim is based.  *E.g.,*

14  *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement

15  ensures that the state courts, as a matter of federal-state comity, will have the first

16  opportunity to pass upon and correct alleged violations of federal constitutional

17  guarantees.  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

18     Under *Rose v. Lundy*, 455 U.S. 509 (1982), and following cases, a mixed petition

19  presenting unexhausted claims must be dismissed unless the petitioner dismisses the

20  unexhausted claims and/or seeks other appropriate relief, such as a stay to return to the

21  state courts to exhaust the claims.

22     As noted previously, Garza alleges in Ground 2 of the second amended petition

23  that he was denied rights to due process, a fair trial, and to present a defense in violation

24  of the Fifth, Sixth and Fourteenth Amendments because the trial court did not give an

25  adverse inference instruction to the jury due to Detective Boruchowitz' failure to preserve

26  the alleged dashcam evidence.  (ECF No. 40, at 9 & 11.)

27     Petitioner contends that Ground 2 was exhausted by his reference to his state

28  petition in his informal brief submitted to the state appellate courts.

As backdrop, indisputably, Garza did not allege any legal claim corresponding to Ground 2 within the four corners of his appellate brief.  Garza argued instead in his appellate brief only that: (a) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to disclose Boruchowitz' police personnel file for defense use in impeaching the detective's testimony about dashcam video; and (b) trial counsel rendered ineffective assistance in failing to present exculpatory evidence developed by the defense investigator which allegedly contradicted Deputy Danneker's testimony regarding the operation of the vehicle dashcam system.  Garza did not articulate any claim within his appellate brief that he was denied rights to due process, a fair trial, and to present a defense because the trial court did not give an adverse inference instruction to the jury due to Detective Boruchowitz' failure to preserve alleged dashcam evidence.  (ECF No. 22-23, at 4-9.)

Petitioner thus relies on Garza's request in his appellate brief that the state appellate courts "review the record relating to all seven (7) grounds in the petition and reach the true merits of the claims therein."  (ECF No. 22-23, at 5.)[3]  Petitioner maintains that he raised the claim in current federal Ground 2 in Ground 1 of his state petition.  (ECF No. 54, at 5.)

However, just as indisputably, Garza did not expressly articulate any claim within state Ground 1 that he was denied rights to due process, a fair trial, and to present a defense because the trial court did not give an adverse inference instruction to the jury due to Detective Boruchowitz' failure to preserve alleged dashcam evidence.  In state Ground 1, Garza alleged virtually exclusively that the State violated *Brady* by failing to disclose, as opposed to preserve, the dashcam evidence.  Ground 1 made three isolated references to a failure to preserve the evidence,[4] but the seven-page claim otherwise

_____

[3] The state appellate courts did as Garza requested and reviewed more than the two claims expressly articulated in his informal appeal brief.  (*See* ECF No. 22-25.)

[4] The heading to state Ground 1 read in part:  "Petitioner was Denied Due Process of Law By the State's Failure to Preserve and/or Disclose Material Evidence Pursuant to Brady v. Maryland . . . ."  (ECF No. 21-18, at 11.)  State Ground 1 further referenced Detective Boruchowitz' testimony that he did not preserve the VHS videotape from the camera system in Fancher's vehicle.  (*Id.*, at 15.)  And the ground

extensively alleged instead that the State had failed to disclose the evidence.  Indeed, the remedy requested was that the court order the State to disclose the dashcam evidence, a remedy that by definition would not be even pertinent if the evidence had not been preserved.  Most critically for the present issue, however, state Ground 1 did not include any express allegation that Garza's conviction should be set aside because the state trial court did not give an instruction that the jury should draw an adverse inference from a failure to preserve the dashcam evidence.  (*See* ECF No. 21-18, at 11-18.)

Petitioner concedes that there was no such legal theory expressly asserted in state Ground 1.  He urges that "[a]lthough [state] Ground One . . . [does] not explicitly state the constitutional violation was the failure of the court to issue an adverse inference to the jury concerning the destroyed audio/visual evidence, that claim can be read into [state] Ground One."  Petitioner relies upon federal authority requiring liberal reading of pleadings filed by *pro se* litigants.  He maintains that he "was clearly asserting *a* constitutional violation had occurred."  (ECF No. 54, at 6, with emphasis added.)

None of the cases cited by Garza for this argument arise in the context of a habeas exhaustion issue.  None of the cases that he cites hold that a federal constitutional claim that a petitioner did not expressly allege nonetheless is fairly presented to a state court.  Rather, under the established law cited previously by the Court, a habeas petitioner must allege in the state courts both the factual basis and the legal theory upon which he relies in order to fairly present and exhaust a federal constitutional claim.  *E.g., Castillo, supra*.  Garza did not do so here.  He alleged in state Ground 1 neither that the state trial court failed to give any required instruction, much less an adverse inference instruction, nor that he was denied federal constitutional rights to due process, a fair trial and to present a defense as a result of the court's failure to do so.  He must allege both to exhaust federal Ground 2.  Moreover, even if this Court were reading a pleading such as Garza's state petition as a pleading in a federal case with the required liberal construction, the Court

cited to *California v. Trombetta*, 467 U.S. 479 (1984), but only in the context of describing materiality on the *Brady* claim.  (*Id.*, at 17.)

would not find that the claim now alleged in federal Ground 2 was alleged by Garza in state Ground 1.  It is just not there.  Ground 2 is not exhausted.

Petitioner further urges that "[b]ecause Ground Two . . . was fairly presented, Ground 5 (C), in which Garza asserts his appellate attorney was ineffective for failing to raise Ground Two, was also fairly presented."  (ECF No. 54, at 6.)  Both Garza's premise and his conclusion are incorrect.  First, Ground 2 is not exhausted.  Second, even if it were, the exhaustion of a substantive claim does not *ipso facto* exhaust a related ineffective-assistance claim.  In this context, unlike the prior relation-back issue, legal theories do matter, as the petitioner must present the state courts with both the factual predicate and the federal legal theory upon which his federal constitutional claim is based.  Garza did not present the state courts with any federal constitutional legal theory that he was denied effective assistance of appellate counsel due to counsel's failure to challenge the state trial court's failure to give an adverse inference instruction.  Ground 5(c) therefore also is unexhausted.

The federal petition, as amended, therefore must be dismissed unless Garza either dismisses the unexhausted Grounds 2 and 5(c) and/or seeks other appropriate relief, such as a stay.

***Procedural Default***

Respondents contend that Ground 4(b) is procedurally defaulted.  In Ground 4(b), Garza alleges that the State committed prosecutorial misconduct when the prosecutor allegedly lied during closing rebuttal argument by telling the jury that Mike Reich never came to Garza's house after the incident.  (ECF No. 40, at 20.)  The state appellate courts rejected the corresponding claim presented on state postconviction review on the basis that Garza waived the claim pursuant to N.R.S. 34.810(1)(b)(2) by not pursuing the claim on direct appeal.  (ECF No. 22-25, at 3.)

Under the procedural default doctrine, federal review of a habeas claim may be barred if the state courts rejected the claim on an independent and adequate state law procedural ground.  Federal habeas review will be barred on claims rejected on an

1   independent and adequate state law ground unless the petitioner can demonstrate either:
2   (a) cause for the procedural default and actual prejudice from the alleged violation of
3   federal law; or (b) that a fundamental miscarriage of justice will result in the absence of
4   review.  *See, e.g., Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).

5       In his sole basis for rejecting the procedural default defense, petitioner challenges
6   the adequacy of the state procedural bar as applied to this case.  Petitioner contends that
7   N.R.S. 34.810(1)(b)(2) was not an adequate state law ground in this case because his
8   prosecutorial misconduct claim is based on evidence outside the trial record and he
9   therefore could not have raised the claim on direct appeal.  (ECF No. 54, at 7-9.)

10      In order for a state procedural rule to be "adequate" as a general matter to support
11  a state court judgment, the state rule must be clear, consistently applied, and well
12  established at the time of the petitioner's purported default.  *See,e.g., Collier v. Bayer*,
13  408 F.3d 1279, 1284 (9th Cir. 2005).  Garza does not challenge the adequacy of the state
14  law procedural rule generally at the relevant time; and, as noted, he instead challenges
15  the adequacy of the rule as applied to his specific case.[5]  *Cf. id.* ("a rule held generally
16  adequate can be deemed inadequate as applied to particular unique circumstances").

17      The Court is not persuaded that N.R.S. 34.810(1)(b)(2) was not an adequate state
18  law procedural as applied to this case.

19      As backdrop, a point of contention at trial concerned the leadup to the incident.
20  The State maintained that Garza, with, *inter alia*, two handguns and an extra ammunition

21

22      [5] The Court therefore does not tarry further over whether N.R.S. 34.810(1)(b)(2) was an adequate
23  state law ground as a general matter at the relevant time.  In that regard, a state law procedural rule is
    adequate if the state courts followed the rule "in the vast majority of cases" during the relevant time.  *Dugger
24  v. Adams*, 489 U.S. 401, 410 n. 6 (1989); *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996).  A
    demonstration that the state courts allegedly departed from a consistent application of the state procedural
25  rule in only a "few cases" fails to establish that the state courts do not regularly and consistently apply the
    procedural rule.  *Dugger*, 489 U.S. at 410 n.6 (the Supreme Court held that the state procedural rule
26  constituted an adequate state law ground where the habeas petitioner presented only five cases with
    arguably inconsistent applications of the rule).  In *Bennett*, the Ninth Circuit established a burden-shifting
27  analysis for determining whether a state procedural rule constitutes an adequate state law ground generally
    for purposes of the federal procedural default doctrine.  Critically, once the state has adequately pled the
28  existence of an independent and adequate state procedural ground as an affirmative defense, the burden
    initially falls to the petitioner to place that defense at issue by coming forward with specific allegations and
    citations seeking to demonstrate the inadequacy of the state procedure.  322 F.3d at 586.

magazine concealed and in the ready, was lying in wait for the deputies following a report of a shots-fired incident (committed by Garza) at Garza's and Lujan's home.  (*E.g.,* ECF No. 20-22, at 14, 16, 33-35, 58, 60-61 64-66, 73 & 116-17.)  The defense maintained that Garza instead simply was sitting outside the home waiting for a friend to come pick him up and that Garza was taking the (loaded) guns (also with a loaded extra ammo magazine) to a pawnshop.  (*E.g.*, *id.*, at 81-82, 88-89 & 98-99.)

During the trial, Garza and Lujan testified that Garza was waiting for his friend Mike a/k/a "Dog."  (ECF No. 20-20, at 28, 78-79, 88-89, 95, 99, 102-04, 113, 124 & 137-38.)  Deputy Danneker testified initially that she "believed" Garza's ride showed up afterwards.  She then immediately stated, however, that she believed that it was Garza's brother who showed up after the shooting but she did not talk to him and she believed that the sheriff did.  (ECF No. 20-13, at 141.)

During the State's rebuttal argument, the prosecutor responded as follows to the defense argument that Garza merely was waiting for his friend to pick him up rather than lying in wait for the deputies:

> Deputy Danneker said his brother showed up, she thought; that the Sheriff was talking to that person.  It wasn't Dog, the person that they called.

(ECF No. 20-22, at 103-04.)

In Ground 4 in his state petition, Garza alleged that this statement constituted prosecutorial misconduct because it allegedly was a lie.  (ECF No. 21-18, at 31-37.)  He attached with the petition photocopies of what purport to be stills from a television news video from after the underlying incident.  (*Id.*, at 55-56.)

The copies in the record in this Court show what appear to be three blurry figures standing in close proximity, perhaps facing one another.  The blurry copies, standing alone by themselves:  (a) indisputably were not in the trial record although by definition, based upon what they purport to be, the stills and video would have been in existence prior to the trial; (b) are not self-authenticating; (c) do not independently establish who the three blurry figures were; and (d) do not establish what the prosecutor knew or had reason

to believe at the time of the State's rebuttal argument, in a situation where his now challenged rebuttal argument had an evidentiary foundation instead in actual trial testimony by Danneker.

The fact that the alleged stills were not in the trial record does not at all mean that Garza had no means of making the stills of record and seeking appropriate relief, including during the original criminal proceedings prior to a direct appeal.  Petitioner cites no apposite authority establishing that the state courts either allow, or are required to allow, a defendant to pursue a stand-alone substantive prosecutorial misconduct claim of this nature, *i.e.,* an alleged lie during closing argument, based upon evidence *dehors* the trial record but that existed at the time of trial, *without instead*:  (a) having to present the evidence at trial in the first instance; (b) clearing the hurdles for a successful motion for new trial in the original criminal proceeding; (c) establishing cause and prejudice overcoming the procedural default of the substantive claim based upon ineffective assistance of trial counsel;[6] and/or (d) otherwise presenting a derivative ineffective-assistance claim *qua* an ineffective-assistance claim rather than instead as a substantive claim based on the circumstances.  That is, petitioner cites no apposite authority establishing that a Nevada defendant must be able to pursue a claim premised upon the prosecution lying during rebuttal argument that is based on evidence outside the then-trial record without instead having to utilize one of the above-described avenues.

Those are issues for Garza vis-à-vis providing evidentiary support via a proper procedural vehicle for a claim of one description or another premised upon the prosecutor lying during the rebuttal argument.  What they are not are issues going to the adequacy of the state procedural bar applied by the state appellate courts to the substantive prosecutorial misconduct claim here.  That is, those all are hurdles for the convicted

---

[6] Again, the sole basis relied upon by petitioner to overcome the procedural default of Ground 4(b) is his challenge to the adequacy of N.R.S. 34.810(1)(b)(2) as applied to this case.  He makes no argument seeking to establish cause and prejudice, and this Court's review is cabined under the party presentation principle to what he argues.  *United States v. Sineneng-Smith*, 140 S.Ct. 1575 (2020).  The Court therefore has not considered, nor does it address, any other theoretically conceivable bases for overcoming the procedural default.  The sole basis argued for overcoming the procedural default is without merit, and that ends the Court's analysis on the procedural default defense.

defendant in pursuing a related claim, of one description or another, including as an ineffective-assistance claim.  Garza failed to present the substantive claim at the proper time; and he indeed potentially could have timely presented the claim—supported by the then-existing stills—in a manner that would have led to their consideration on a direct appeal.  He did not do so in this case, for whatever reason, although there were procedural avenues to do so, including prior to a direct appeal.  The state courts properly applied N.R.S. 34.810(1)(b)(2) to the substantive prosecutorial misconduct claim when presented on postconviction review.

Ground 4(b) thus is procedurally defaulted.

### *Motion for Discovery*

Rule 6(a) of the Rules Governing Section 2254 Cases (the "Habeas Rules") provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ."  In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Rule 6 was meant to be applied consistently with its prior opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which expressly called for the adoption of the rule.  520 U.S. at 904 & 909.  In *Harris*, the Supreme Court held that "where specific allegations before the court show reason to believe that the petitioner *may*, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."  394 U.S. at 300 (emphasis added).  In *Bracy*, a unanimous Supreme Court overturned a decision denying discovery where the petitioner's claim of judicial bias in his particular case was based on "only a theory," where the claim was "not supported by any solid evidence" with regard to the theory, and where the Supreme Court expressly noted that "[i]t may well be, as the Court of Appeals predicted, that petitioner will be unable to obtain evidence sufficient to support" the theory that the petitioner sought to pursue in the discovery.  520 U.S. at 908 & 909.

The Ninth Circuit, consistent with *Bracy* and *Harris*, thus has held repeatedly that habeas discovery is appropriate in cases where the discovery sought only might provide

support for a claim.  *See, e.g., Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005); *Jones v. Wood*, 114 F.3d 1002, 1009 (9th Cir. 1997).  *See also Osborne v. District Attorney's Office*, 521 F.3d 1118, 1133 (9th Cir. 2008), *reversed on other grounds*, *District Attorney's Office v. Osborne*, 557 U.S.52 (2009) (in discussing its precedent in *Jones* as to habeas discovery, the Ninth Circuit reinforced the point that a court should allow discovery that, as emphasized by the Court of Appeals, only "*may* establish" a factual basis for the petitioner's claim).

The Court in the main is not persuaded that petitioner has demonstrated good cause for federal habeas discovery, for the reasons discussed as to the particular requests below.  The discussion below is against the backdrop of the prior discussion herein of the factual background and claims presented.

### *Subpoena to the Sheriff for Detective Boruchowitz' Police Personnel File*

In support of current Ground 1, petitioner seeks leave to subpoena Detective Boruchowitz' police personnel file from the Nye County Sheriff.  In Ground 1, petitioner alleges a *Brady-Giglio* claim[7] based on the State's failure to produce Boruchowitz' personnel file to the defense for impeachment, in particular for use in impeaching his August 1, 2013, testimony that the deputies' dashcam systems did not have any relevant video.  (ECF No. 40, at 5-9.)

The state district court issued a subpoena to the sheriff in 2016 for the exact same file.  The sheriff's office responded to the state district court that the file had "disappeared." (ECF No. 21-28; ECF No. 22-05, at 4; ECF No. 22-13, at 9-10.)  Petitioner acknowledges this prior response by the sheriff to the state court's subpoena.  He urges, however, that "[n]ot only is this impossible to believe and most likely untrue, its alleged disappearance does not relieve the State of its obligation to turn over what it obviously knows about Boruchowitz' history of misconduct."  (ECF No. 44, at 6-7.)  Be that as it perhaps may be (subject to the discussion below), the subpoena sought would be directed once again to the sheriff's records custodian for once again the same file.  The mere fact that a

---

[7] *See Brady, supra; Giglio v. United States*, 405 U.S. 150 (1972).

subpoena instead is a federal court subpoena carries no additional talismanic force that a state court subpoena does not have and that causes documents to reappear and be produced. Merely the hope that "it could happen" is not a viable basis for federal habeas discovery. This sort of unrealistic quest is not what is contemplated when the caselaw states that a petitioner need show only that he "*may*, if the facts are fully developed, be able to demonstrate that he . . . is entitled to relief." *Harris,* 394 U.S. at 300 (emphasis added). The Supreme Court was not speaking of such tilting at windmills as petitioner seeks to do here in pursuing an entirely duplicative request.[8]

Nor is the Court fully sanguine—at least on the showing made—that there is a sufficient likelihood, even under the controlling caselaw's permissive formulation, that the detective's personnel file reasonably possibly would have produced admissible fodder for impeachment at Garza's trial starting in late July 2013.

Petitioner relies in part on the Ninth Circuit's *Brady-Giglio* decision in *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013). In *Milke*, the Ninth Circuit held that the state court had unreasonably applied *Brady-Giglio* when it held that an officer's personnel file did not include material impeachment information. At the underlying state criminal trial, the defendant had contested the officer's testimony about the interrogation. She maintained, *inter alia*, that he instead ignored her statement that she did not understand the *Miranda* warnings, that he proceeded with the interrogation despite her request for a lawyer, and that he then twisted and embellished her unrecorded statements to make it appear that she confessed. The withheld personnel file memorialized multiple incidents where courts, *e.g.,* had tossed out confessions or overturned convictions based on a judicial determination that the officer had violated constitutional rights during interrogations and lied about it under oath. Those final judicial findings of directly relevant prior misconduct of course were highly material under *Brady-Giglio*. *See* 711 F.3d at 1001-03.

---

[8] In this same quixotic vein, petitioner notes that the sheriff's office response was that the file had "disappeared," "not that the files don't exist as the state asserts in its opposition." (ECF No. 53, at 2.) Regardless of whether the file disappeared entirely from existence or just from the sheriff's office, petitioner is seeking to send a duplicative second, now federal, subpoena to a sheriff's office that responded that it does not have the file. Splitting hairs over their word choice is not likely to lead to a different result.

14

In contrast, petitioner here does not tender evidence suggesting the existence of impartial judicial findings of misconduct directly relevant to the issue at hand.  Rather, he relies instead primarily on local newspaper reporting on charges and countercharges leveled between Boruchowitz and political adversaries both inside and outside the sheriff's office.  (*See* ECF Nos. 41-3 through ECF No. 41-8.)  Most of the reporting concerns allegations *after Garza's trial* and heading into what appears at least from the reporting to have been a hotly contested, "mudslinging" sheriff's race heading into the 2014 election.  The newspaper reporting itself does not hold back from "taking shots" at Boruchowitz and/or other involved parties while reporting on the back-and-forth charges and countercharges.  (*E.g.,* ECF No. 41-4, at 5.)  Boruchowitz' earlier 2010 arrest, his being placed on administrative leave in 2014, the perjury allegations, and the lawsuits referenced by petitioner in his motion all appear to have been part of an overall milieu of charges and countercharges being made between Boruchowitz and adversaries both inside and outside the sheriff's office.  The charges and countercharges as well as the reporting of the allegations are a bit afield from impartial judicial findings of misconduct.

Even more critically, over and above the apparent partiality in the source of many of the allegations, the allegations themselves were principally not of alleged misconduct directly relevant to the issue at hand in Garza's—mostly earlier—July 2013 trial.  For example, petitioner points to Boruchowitz having been accused of "mishandling video evidence"—referring to his allegedly having shown to other officers in 2016, "for comic relief," pornographic video from a criminal investigation.  While the allegation is salacious and the conduct alleged certainly would be reprehensible, it does not involve allegations that Boruchowitz intentionally destroyed exculpatory video evidence in other cases.  Petitioner's characterization of the allegation as similarly being one of "mishandling video evidence" begs the question.

It is subject to question whether a trial court would allow impeachment based upon such highly tangential, collateral and politicized allegations, if made prior to the trial and even allowing for *Brady-Giglio* and the right of a criminal defendant to present a defense.

15

In any event, the Court just is not persuaded that petitioner—on the showing made—has demonstrated good cause for sending simply a second document production subpoena to the same sheriff, who is the new sheriff in Nye County following the 2014 election, after that same sheriff's office responded in 2016 that it does not have the file.

### Subpoena to Attorney Thomas Gibson

Petitioner further seeks to subpoena attorney Thomas Gibson for production of materials from the Boruchowitz' personnel file allegedly in his possession.  (ECF No. 44, at 3 & 7-8.)  However, in the Gibson declaration to which petitioner refers, Gibson appears to reflect that, pursuant to court order, he returned the materials that he had to the Nye County District Attorney's Office after the conclusion of the case that he was working on.  He further suggests possible alternative avenues for locating and obtaining the personnel file following upon the sheriff having denied having the file.  (ECF No. 32, at 7-8.)

Notwithstanding the preceding discussion questioning materiality under *Brady-Giglio*, the Court is not categorically averse to possible discovery of the personnel file to reliably get to the bottom of what it contained prior to Garza's trial—if the file can be found.  However, petitioner at the very least needs to present proposed requests that do not seek discovery from persons who already have said that they do not have the file.  There are means under the federal discovery rules for trying to track down evidence that do not involve serving futile and/or redundant simple document production subpoenas on persons who already have denied having possession of the evidence. *See,e.g.,* Fed.R.Civ.Pro. 30(b)(6).

On the showing and record presented, the Court will deny the current discovery request as to Gibson.

### Boruchowitz Deposition

While petitioner has presented extensive legal argument, the practical utility of deposing Boruchowitz is not immediately evident to the Court.

If petitioner can show that there was contemporaneous impeachment information that is material under *Brady-Giglio* that the State withheld at trial, then there is no need to

run through that with Boruchowitz in a deposition.  The potential impeachment information either is material under *Brady-Giglio* or it is not.  The Court does not need deposition testimony to make that determination, and the Court most likely will not be independently assessing Boruchowitz' actual underlying credibility in resolving any issue in this case.

Further, even if *arguendo*, as Garza maintains, Boruchowitz perjured himself at trial about what was on the deputies' dashcam videos, it is rather unlikely that he now will just break down on examination by petitioner's counsel and confess all.  The mere hope for such an improbable result would not present good cause under Habeas Rule 6(a).

Petitioner would need to provide the Court with at least some inkling of how a Boruchowitz deposition, as a very practical matter, would be a worthwhile application of limited resources by all concerned that substantially contributes to the ultimate resolution of this case.  On the showing and argument made, which does not discuss the practical rationale for this specific discovery request, the Court is not persuaded that it is.

### *Fancher Dashcam Video or Related Interrogatories*

In his final requested discovery item, petitioner seeks, in support of a *Brady* claim:

> Dashcam video from Officer Fancher's car; or in the alternative, permission to serve interrogatories about the procedures involved in storing dashcam videos and whether an officer individually has the authority to delete dashcam video; whether the dashcam video can be retrieved from a hard drive or other location where it is stored electronically.

(ECF No. 44, at 3.)

Respondents note that petitioner does not currently allege a *Brady* claim based upon nondisclosure of a Fancher dashcam video, and Garza concedes that that is true. (ECF No. 53, at 6-7.)  The Court will assume, *arguendo*, that Garza has at least arguable bases for relation back and exhaustion if further amendment were sought.

The practical utility of the discovery is not clear to the Court, however.  Once again, petitioner appears for some reason to be hoping for a different answer regarding an alleged Fancher dashcam video than is reflected by fairly extensive factual development on the point in the trial record.

As backdrop, Lieutenant Mark Medina with the Nye County Sheriff's Office testified that:  (1) he inspected the camera system in Deputy Fancher's patrol vehicle on August 11, 2011, nearly a year prior to the incident in question; (2) Medina inspected the system as a routine part of the in-service training that he was giving that day on mobile video in-car camera operation; (3) Fancher's vehicle had an obsolete and inoperable "VHS Docucam" system "that we essentially don't use anymore, because nobody uses VHS tapes anymore;" (4) due to budgetary constraints, the old inoperable system was not removed from the vehicle and a newer, functioning camera system was not put in the vehicle because the vehicle itself was an older vehicle with a limited remaining service life; and (5) the inoperability of the camera system in Fancher's vehicle thus was a continuing issue thereafter that was known to his supervisors and that was not going to be remedied during the remaining service life of the vehicle.  (ECF No. 20-19, at 154-60.)

Deputy Fancher similarly testified that his vehicle's camera system was inoperable at the time of the incident in question, consistent with Lieutenant Medina's testimony later in the trial that the system was inoperable and was not going to become operable during the remaining service life of the vehicle.  (ECF No. 20-19, at 42-43, 59-61 & 81.)

The defense called Detective Boruchowitz to testify regarding video from the patrol vehicles.  It is clear from the questioning that the defense did so in an effort to suggest that Boruchowitz had deprived the jury of the opportunity to itself see what the dashcam video  showed.  Regarding the Fancher patrol vehicle, Boruchowitz testified that: (1) he pulled the VHS tape from the system and reviewed it; (2) there was no video of the incident and there instead were recordings of traffic stops from many years prior (which would be consistent with the system having been inoperable for a long period); (3) the system in Fancher's vehicle "simply was not operational in any way, shape, or form that day" with portions of the system being unplugged and other portions missing; (4) he did not preserve the videotape because the "VHS tape was not evidence of this incident;" and (5) because he believed that it had no evidentiary significance, "[t]he tape was given to Captain Becht, which is the traditional format for that."  (ECF No. 20-19, at 231-43.)

There is not a realistic possibility that the proposed discovery even "*may*" enable Garza to demonstrate that he is entitled to relief on an, as yet unpled, *Brady* claim.  After the three officers' testimony at trial, there is not a realistic possibility that the sheriff's office will respond differently.  There thus is not a realistic possibility that the proposed discovery will enable Garza to establish either that the State withheld–as opposed to at best failed to preserve–dashcam video from Fancher's vehicle or even more significantly, that the alleged video was actually material for purposes of *Brady*.  Again, a federal subpoena or discovery request does not have some talismanic power that forces persons to give different answers to a question than they gave before.  To be sure, it is not wholly inconceivable, in terms of what is abstractly theoretically possible, that not just Boruchowitz acting alone but now all three officers conspired together to commit perjury by concocting an obsolescence story about the Fancher vehicle camera system.  But this proposed discovery is not going to suss that out, as, again, a federal subpoena simply does not have a talismanic power that changes people's answers to questions that already have been asked and answered, in this case extensively at trial.

The Court will not grant leave to conduct discovery basically asking the same query that was asked and answered before in the hope that the sheriff's office might respond differently this time.  Nor is the Court going to grant leave for the alternative discovery requested, which does not even speak to the type of vehicle camera system in question.  Moreover, even if petitioner were to establish that a single officer such as Boruchowitz did not have the authority to delete, erase or fail to preserve then actually extant video, that does not return the video to existence, establish that it was withheld as opposed to not preserved, or establish its materiality for a *Brady* claim.  Evidence *arguendo* lost by the unauthorized act of a single officer is still just as lost; and *Brady* is directed to withheld rather than unpreserved evidence.  On the showing and argument made, it does not appear that there is a practical possibility of the discovery leading anywhere material, including producing possible evidence supporting any as yet unpled *Brady* claim.

The motion for discovery therefore will be denied on the showing made.

1    IT IS THEREFORE ORDERED that respondents' motion to dismiss (ECF No. 52)

2  is GRANTED IN PART and DENIED IN PART, with (a) Ground 4(b) being DISMISSED

3  with prejudice as procedurally defaulted; and (b) the Court holding that Grounds 2 and

4  5(c) are not exhausted.  The entire action will be dismissed without prejudice unless,

5  within thirty (30) days of entry of this order, petitioner either voluntarily dismisses Grounds

6  2 and 5(c) and/or seeks other appropriate relief, such as a stay.

7    IT IS FURTHER ORDERED that petitioner's motion for discovery (ECF No. 44) is

8  DENIED on the showing made.[9]

9    DATED THIS   March 29, 2021

10

11

12   _____

13   Gloria M. Navarro
     United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26    [9] The Court in the past often has not held habeas petitioners rigorously to the requirements of the

27  second sentence in Habeas Rule 6(b) vis-à-vis, *inter alia*, attaching proposed interrogatories.  In this case,
    however, any further requests to the Court for discovery will have to rigorously comply with that provision

28  of the rule.  The Court essentially needs to see that the discovery has been fully thought through as a
    practical matter.  Federal habeas discovery is not automatic as a matter of right.