# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

EDWARD GARZA,

                              Petitioner,

    v.

BRIAN WILLIAMS[1], et al.,

                              Respondents.

Case No. 2:18-cv-00995-GMN-BNW

**ORDER**

Edward Garza is a Nevada prisoner who was convicted of attempted murder with the use of a deadly weapon, assault with a deadly weapon, and aiming a firearm at a human being/discharging a firearm where a person might be endangered and is serving consecutive sentences of 96 to 240 months, 96 to 240 months for the special enhancement for use of a deadly weapon, and 364 days.[2] (ECF No. 21-2.)  Garza filed a second amended petition for writ of habeas corpus under 18 U.S.C. § 2254, alleging claims of due process and fair trial violations for the suppression of exculpatory and material evidence; ineffective assistance of trial counsel; prosecutorial misconduct; and ineffective assistance of appellate counsel. (ECF No. 40.)  Also before the Court is Garza's Motion for Discovery (ECF No. 68).  This Court denies the remaining grounds of Garza's petition, denies him a certificate of appealability, denies his motion for discovery, and directs the clerk to enter judgment accordingly.

---

[1] The state corrections department's inmate locator page indicates that Petitioner is incarcerated at the Southern Desert Correctional Center ("SDCC"). *See https://ofdsearch.doc.nv.gov/form.php* (retrieved June 2022 under identification number 1111107). The department's website reflects that William Hutchings is the warden of that facility. *See https://doc.nv.gov/Facilities/SDCC_Facility/* (retrieved June 2022). At the end of this order, the Court directs the Clerk of the Court to substitute Petitioner's current immediate physical custodian, William Hutchings, as Respondent for the prior Respondent Brian Williams, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2] The state court merged the attempted murder with use of a deadly weapon count with the assault with a deadly weapon count for sentencing purposes. (ECF No. 21-2.)

## I.    BACKGROUND[3]

On June 30, 2012, the police were dispatched to Garza's home based on a reported shooting. (ECF No. 21-18 at 7–8.)  Garza was sitting outside his residence with two fully loaded handguns. (ECF No. 22-16 at 3.)  A gun fight ensued between Garza and the two responding officers. (*Id.*)

Officer Danneker testified at trial that she was the first responding officer on the scene. (ECF No. 20-13 at 104-05.)  She observed two individuals at the residence, Garza and his girlfriend, Janice Lujan ("Lujan"), who was pacing on the property outside of the fence. (*Id*. at 105.)  Garza was sitting on a chair near a fence post. (*Id*. at 111.)  Officer Danneker spoke to Lujan while remaining behind her police vehicle for safety. (*Id*. at 113.)  Officer Danneker testified that another police officer, Officer Fancher, arrived and at that point, Officer Danneker turned her attention to Garza. (*Id*. at 115.)  Officer Danneker was 12 to 15 feet away from Garza, explained that they were on the property to determine if anyone was hurt, and she asked Garza to stand up and show his hands. (*Id*. at 115-116.)  Garza remained seated. (*Id*. at 116.)

Officer Danneker instructed Garza for a third time to stand up. (*Id*. at 118.)  Garza began to stand up and raise his left hand. (*Id*.)  Garza raised his right hand and the firearm in his right hand was pointed at Officer Fancher, who was about 30 feet away from Garza. (*Id*. at 118, 124.)  Officer Danneker testified that she observed that there were shots coming towards Officer Fancher and that Officer Fancher was firing back. (*Id*. at 122.)  Officer Danneker instructed Lujan to get down and fired shots as well. (*Id*.)  Officer Danneker further testified that although her vehicle had I-COP, a mobile video camera system, there was no recording of the incident from her vehicle because she did not manually turn it on. (*Id*. at 135-36.)

Officer Fancher testified at trial that when he arrived at the scene, he observed Officer

---

[3] The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court.  The Court summarizes the factual assertions solely as background to the issues presented in the case, and it does not summarize all such material.  No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court.  Any absence of mention of a specific piece of evidence or category of evidence does not signify that the Court has overlooked the evidence in considering Garza's claim.

Danneker speaking to Lujan and that Garza was seated. (ECF No. 20-19 at 19.)  He exited his vehicle and began to walk towards Garza. (*Id*. at 20.)  While he was walking, Officer Danneker instructed Garza to stand up and show his hands. (*Id*.)  Officer Fancher testified that Garza raised his right hand and when Officer Fancher observed Garza begin to raise the firearm in Garza's right hand in Officer Fancher's direction, Officer Fancher fired his first round. (*Id*. at 22.)  Garza then held his firearm with two hands and began to fire multiple shots. (*Id*. at 22-23.)  Garza then held his firearm with one hand and continued to fire multiple shots. (*Id*. at 29.)  Officer Fancher testified that the video recording system in his vehicle did not work. (*Id*. at 60.)

Lujan testified at trial that she was speaking to Officer Danneker in her front yard when Officer Fancher arrived. (ECF No. 20-20 at 32-35.)  She testified that when Officer Fancher exited his vehicle his gun was drawn and pointed at Garza. (*Id*. at 36.)  Officer Fancher remained behind his car door and instructed Garza to show him his weapon. (*Id*. at 37.)  Lujan testified that Officer Danneker yelled at Garza to show his hands. (*Id*.)  Garza bent over and picked up his firearm and Lujan heard Officer Fancher fire a shot. (*Id*. at 38-39.)  Lujan heard more shots fired and observed Officer Fancher shoot at Garza. (*Id*. at 40.)

Garza testified at trial that he had two loaded firearms with him while he sat in front of his house waiting for a friend to pick him up. (ECF No. 20-20 at 102-03.)  Lujan was speaking to Officer Danneker when Garza heard a siren and Garza stood up. (*Id*. at 108.)  Garza testified that Officer Fancher exited his vehicle, pulled out his firearm, and yelled at Garza to show his weapon. (*Id*. at 109.)  Garza began to reach down slowly to pick up his firearm as he heard Officer Danneker instruct him to show his hands. (*Id*. at 111.)  Garza testified that he raised his left hand while holding his gun in his right hand with the gun pointing downward. (*Id*. at 112.)  Officer Fancher fired at Garza. (*Id*. at 114.)  Garza testified that Officer Danneker then fired a shot and Garza cocked his firearm and shot into the ground to scare the officers away. (*Id*. at 115.)  Garza fell after he was shot multiple times. (*Id*. at 118.)

Following a five-day trial in July and August 2013, a jury found Garza guilty of attempted murder with the use of a deadly weapon; assault with a deadly weapon; and aiming a firearm at a human being/discharging a firearm where a person might be endangered. (ECF No. 20-23.)  Garza

filed a direct appeal.  On June 12, 2014, the Nevada Supreme Court affirmed his conviction. (ECF Nos. 21-13, 21-14.)

Garza filed a state post-conviction petition for habeas corpus relief.  (ECF Nos. 21-18, 22-6.)  The state court held an evidentiary hearing in March 2017, and then entered an order the following month denying the petition. (ECF Nos. 22-13, 22-16.)  Garza initiated this federal habeas case in May 2018. (ECF No. 1.)  He filed his second amended petition on July 1, 2020. (ECF No. 40.)  The Court dismissed Ground 4(b) as procedurally defaulted and found Grounds 2 and 5(c) were unexhausted. (ECF No. 56.)  Garza moved to voluntarily dismiss Grounds 2 and 5(c) so that he may pursue his remaining claims. (ECF No. 58.)  The respondents answered the second amended petition and Garza replied. (ECF Nos. 63, 66.)

## II.    GOVERNING STANDARDS OF REVIEW

### a.   Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (first quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and then citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable

application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75.

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### b. Standard for Evaluating an Ineffective Assistance of Counsel Claim

In *Strickland*, the Supreme Court propounded a two-prong test for analysis of ineffective assistance of counsel claims requiring Petitioner to demonstrate that: (1) the counsel's "representation fell below an objective standard of reasonableness[;]" and (2) the counsel's deficient performance prejudices Petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering an ineffective assistance of counsel claim must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is Petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for Petitioner to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, errors must be "so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state court previously adjudicated the ineffective assistance of counsel claim under *Strickland*, establishing the court's decision was unreasonable is especially difficult. *See Richter*, 562 U.S. at 104-05. In *Richter*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions

were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## III.   DISCUSSION

### a.   Ground 1

In Ground 1, Garza alleges that the State suppressed exculpatory and material evidence in violation of his rights to due process and a fair trial under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). (ECF No. 40 at 5-9.)  At trial, Detective Boruchowitz testified that there was no video from Officer Danneker's I-Cop dashcam system and that he reviewed Officer Fancher's I-Cop dashcam footage, determined that there was no video of the incident, and turned over the tape to the captain. (ECF No. 20-19 at 238.)  Detective Boruchowitz claimed the I-Cop system on Officer Fancher's vehicle was not operational at the time of the incident. (ECF No. 40 at 5-9.)

Garza asserts that the State failed to disclose impeachment evidence regarding Detective Boruchowitz's history of unprofessional behavior and misconduct. (*Id*. at 8.)  Specifically, Garza contends that Detective Boruchowitz has been accused of mishandling video evidence by showing confiscated pornographic videos for "comic relief." (*Id*.)  In addition, Detective Boruchowitz has been sued for wrongful arrest and assault, has been put on administrative leave, and was arrested in 2010. (*Id*.)

In denying Garza's post-conviction appeal, the Nevada Court of Appeals held:

> Garza claimed the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose evidence of law enforcement officer misconduct, dash camera recordings, and his medical records. However, he had not demonstrated that the State could or should have known of the law enforcement officers' misconduct at the time of his trial. [FN 3] *See Mazzan v. Warden*, 116 Nev. 48, 67, 993 P.2d 25, 37 (2000) (identifying components of a *Brady* violation); *Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.3d 222, 225 (1984) (a petitioner is not entitled to postconviction relief if his claims are bare or belied by the record). And, because he learned of the bases for his remaining *Brady* claims during the trial, he waived these claims by not raising them on direct appeal. *See* NRS 34.810(1)(b)(2); *Franklin*, 110 Nev. at 752, 877 P.2d at 1059.
>
> [FN3] We note Garza's jury trial ended August 5, 2013, and the newspaper article he relies upon in support of his law-enforcement-officer-misconduct claim was dated July 4, 2014.

The Nevada Court of Appeals' rejection of Garza's claim was an unreasonable application of clearly established law as determined by the United States Supreme Court.  For claims under

*Brady*, the prosecutor's knowledge does not define the limits of constitutional liability. *Brady* imposes a duty on prosecutors to learn of material exculpatory and impeachment evidence in the possession of state agents, such as police officers. *See Youngblood v. West Virginia*, 547 U.S. 867, 869-70 (2006) ("*Brady* suppression occurs when the government fails to turn over even evidence that is 'known only to police investigators and not the prosecutor.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995))).  The Nevada appellate court based its rejection of Garza's claim on Garza's failure to demonstrate that the State could or should have known about Detective Boruchowitz's alleged misconduct and failed to consider that, under United States Supreme Court precedent, a law enforcement agency's knowledge of Detective Boruchowitz's misconduct is imputed to the government.  *See Youngblood*, 547 U.S. at 869-70.  AEDPA's deferential standard is therefore not applicable and the Court applies *de novo* review to Ground 1.

Even on *de novo* review, the Court denies habeas relief as to Ground 1.  Garza must demonstrate that the improperly withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435.  In *Brady*, the Supreme Court recognized a prosecutor's obligation to disclose exculpatory evidence, whether substantive or for impeachment purposes, when such evidence is "material" to the defense. *Brady*, 373 U.S. at 87.  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).  Materiality "must be evaluated in the context of the entire record." *See United States v. Agurs*, 427 U.S. 97, 112 (1976).  The mere possibility an item of undisclosed information might have helped the defense or affected the outcome of the trial does not establish materiality. *See Agurs*, 427 U.S. at 109.

Garza argues that Detective Boruchowitz's credibility was critical to the outcome of Garza's trial because it determined whether the jury believed Garza and Lujan's testimony. (ECF No. 40 at 7-8.)  Garza relies on the Ninth Circuit's decision in *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013), wherein the Ninth Circuit found that the petitioner's claim was not owed deference under AEDPA and that the suppression of misconduct of an officer in state court "distorted the fact-finding process, forcing the state judge to make her finding based on an unconstitutionally

incomplete record." *Milke*, 711 F.3d at 1007.  Unlike the situation in *Milke*, however, where the only evidence of guilt was the defendant's purported unrecorded, uncorroborated, and unwitnessed confession, in the instant matter Detective Boruchowitz did not testify as a witness of the shooting or as to any confession from Garza. *Compare Milke v. Ryan*, 711 F.3d at 1000.  Based on the review of the record, the Court cannot conclude that impeaching Detective Boruchowitz's testimony would necessarily bolster Garza and Lujan's testimony in the eyes of the jury; unlike *Milke*, in this matter the jury was presented with additional evidence and corroborating witness testimony that Garza committed the crimes for which he was convicted.

Ground 1 fails because Garza cannot demonstrate a reasonable probability that, had the impeachment evidence of Detective Boruchowitz's misconduct been disclosed to the defense, the result of the proceeding would have been different.  The state trial court heard Garza and Lujan's versions of the circumstances of the shooting as well as Officer Danneker and Officer Fancher's versions.  Officer Fancher testified that he observed Garza raise his firearm in Garza's right hand in Officer Fancher's direction, when Officer Fancher fired his first round, that Garza then held his firearm with two hands, switched positions and continued to fire multiple shots at Officer Fancher. (ECF No. 20-19 at 22-23, 29.)  Officer Fancher testified that the I-Cop video recording system in his vehicle was not operational. (*Id*. at 60.)  Officer Danneker also testified that Garza raised his right hand holding his firearm, pointed his firearm at Officer Fancher, and she further testified that she observed Garza shooting towards Officer Fancher. (ECF No. 20-13 at 122.)  Officer Danneker also testified that her vehicle did not obtain an I-Cop recording of the incident because she did not manually turn it on. (*Id*. at 135-36.)  The evidence at issue regarding Detective Boruchowitz is of limited value as it does not impeach or otherwise affect the credibility of Officer Danneker or Officer Fancher.

In addition, Detective Murphy testified at trial regarding the investigation of the scene. (ECF No. 20-17 at 163-68; 20-20 at 181-83.)  Detective Murphy testified that he observed the area and did not find evidence that bullets struck the ground. (ECF No. 20-20 at 182.)  He further testified that if he had observed evidence of bullets striking the ground that he would have photographed it. (*Id*.)

Although Garza may have been able to further impeach Detective Boruchowitz if he obtained the alleged *Brady* evidence, the outcome of the trial would not have been different. The evidence regarding Detective Boruchowitz's misconduct is not material for habeas purposes because it would not negate the evidence against Garza, including testimony from Officers Fancher and Danneker that Garza pointed his firearm and shot at Officer Fancher and testimony from Detective Murphy that there was no evidence of shots striking the ground. The defense called Detective Boruchowitz to testify that he reviewed the I-Cop systems and that there were no video recordings capturing the incident from Officer Fancher and Danneker's vehicles. (ECF No. 20-19 at 232-40.) Detective Boruchowitz testified that Officer Fancher's I-Cop recording system was not operational. (*Id.* at 237.) He further testified that a videotape of an unrelated incident was pulled from Officer Fancher's system and that he turned it over to his captain. (*Id.* at 238.) In light of the evidence against Garza and even assuming Detective Boruchowitz's trial testimony was called into question, Garza cannot show a reasonable probability that the result of the proceeding would have been different.

In order to be material within the meaning of *Brady*, the undisclosed information or evidence acquired through that information must be admissible. *United States v. Kennedy*, 890 F.2d 1056, 1059 (9th Cir. 1989). Garza relies on a local newspaper article alleging that Detective Boruchowitz organized group viewing sessions of pornographic video evidence. (ECF No. 40 at 8.) Garza further proffers that Detective Boruchowitz has been accused of lying during testimony, has been sued for wrongful arrest and assault, has been put on administrative leave, and was arrested in 2010. (*Id.*) Garza relies primarily on local newspaper reporting on charges and countercharges leveled between Detective Boruchowitz and political adversaries inside and outside of the sheriff's office. (ECF Nos. 41-3 through 41-8.) As stated in a previous order, while such allegations against Detective Boruchowitz are salacious and would be reprehensible, the allegations are not impartial judicial findings as proffered in *Milke* and do not involve allegations that Detective Boruchowitz intentionally destroyed exculpatory video evidence in other cases. As such, the Court is not convinced that such material would have been admissible in state court to

impeach Detective Boruchowitz.[4]

Even if the material at issue were deemed admissible by the state trial court, the Court nonetheless does not conclude that the evidence regarding Detective Boruchowitz's alleged misconduct in unrelated cases "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. The Court denies habeas relief with respect to Ground 1.

### b. Motion for Discovery

#### i. Background

In support of Ground 1, Garza renews his request for disclosure of the portion of Detective Boruchowitz's personnel file that is in attorney Thomas Gibson's possession. (ECF No. 68 at 3-5.) In June 2015, Garza's post-conviction counsel issued a subpoena *duces tecum* to the Nye County Sheriff's Office ("sheriff's office"). (ECF No. 21-28.) Among other items, Garza requested the "complete employment records" for Detective Boruchowitz and Officer Medina. (*Id.*) The sheriff's office did not comply with the subpoena, which prompted Garza to file a motion to compel compliance. (ECF Nos. 21-30, 21-32.)

The state court determined that *in camera* production of the employment records was warranted and granted Garza's motion. (ECF No. 22-2.) Although records were subsequently produced for Officer Medina, the sheriff's office told the state court that all of Detective Boruchowitz's files were missing. (ECF No. 22-5 at 4–5.) The court indicated that other individuals and/or entities may be subpoenaed. (*Id.*) The deputy district attorney confirmed that Detective Boruchowitz's records were successfully subpoenaed in a different criminal case, and he would find out whether copies were available. (*Id.*)

Garza's supplemental state post-conviction petition asserted that newspaper articles and television news reports repeatedly addressed allegations of Detective Boruchowitz mishandling

---

[4] *See* Nev. Rev. Stat. § 50.085(3). ("Specific instances of conduct of a witness, for the purposes of attacking or supporting the witness's credibility, other than conviction of crime, may not be proved by extrinsic evidence. They may, however, if relevant to truthfulness, be inquired into on cross-examination of the witness . . . subject to the general limitations upon relevant evidence and the limitations upon interrogation and subject to the provisions of NRS 50.090.")

evidence in criminal cases, yet the sheriff's office refused to comply with the state court's order to produce his personnel file and claimed it was lost, stolen, or no longer existed. (*Id.* at 3.)  The prosecution's inability to produce Detective Boruchowitz's file, Garza argued, should result in a presumption that the files would constitute *Brady* material and be adverse to the State's position. Following an evidentiary hearing, the state court denied the supplemental petition. (ECF Nos. 22-13, 22-16.)

In December 2018, in the instant matter, Garza filed a motion for discovery regarding Detective Boruchowitz's personnel file, which the Court denied without prejudice. (ECF Nos. 24, 33.)  The Court appointed counsel based on the potential discovery issues and Garza's lengthy sentence instructing counsel to investigate Garza's *Brady* allegations. (*Id.*)  In July 2020, Garza filed another motion for discovery seeking to subpoena Detective Boruchowitz's personnel file from the Nye County Sheriff and attorney Thomas Gibson. (ECF No. 44.) The Court denied Garza's motion for discovery finding that it was subject to question whether a trial court would allow impeachment based on tangential, collateral, and politicized allegations and that Nye County and Thomas Gibson ("Gibson") nonetheless denied having possession of the evidence. (ECF No. 56 at 13-16.)  In the instant discovery motion, Garza attaches a declaration from Gibson wherein Gibson provides that he has possession of copies of a portion of Detective Boruchowitz's personnel file. (ECF No. 69-1.)

### ii.  Discussion

Garza argues that Detective Boruchowitz has been accused of instances of misconduct, such as mishandling video evidence, in which he showed pornographic videos that were part of a criminal investigation for "comic relief." (ECF No. 68 at 6.) Garza asserts that Detective Boruchowitz has been accused of lying during testimony, has been sued for making a false arrest and committing assault, has been put on administrative leave, and has been arrested. (*Id.*)  Garza relies on *Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013), in which the Ninth Circuit held that the state court had unreasonably applied *Brady-Giglio* when it held that an officer's personnel file did not include material impeachment information. The withheld personnel file memorialized multiple incidents where courts, e.g., had tossed out confessions or overturned convictions based on a

judicial determination that the officer had violated constitutional rights during interrogations and lied about it under oath. Those final judicial findings of directly relevant prior misconduct of course were highly material under *Brady-Giglio*. *See* 711 F.3d at 1001-03. Garza argues that similar to *Milke*, the state failed to turn over impeachment material related to Detective Boruchowitz, which includes accusations of mishandling evidence and lying under oath. (ECF No. 68 at 7.)

Respondents argue that Garza cannot demonstrate good cause to conduct discovery because he was not diligent and failed to develop evidence in state court. They assert that Garza declined to conduct discovery of Detective Boruchowitz's personnel file in state court in favor of potentially obtaining a tactical advantage. (ECF No. 70 at 3-4.) In state court, Garza cited concerns related to the accuracy, authenticity, and completeness of the copies of the file that were in Gibson's possession and that receipt of such file would not resolve the *Brady* issues before the state court. (*Id*. at 6.) Respondents further argue that Garza must demonstrate that this Court is not limited to considering evidence presented to the Nevada appellate courts in accordance with *Cullen v. Pinholster*, 563 U.S. 170 (2011). Finally, Respondents argue that Garza fails to demonstrate that the evidence requested is material because the alleged misconduct, with exception to an unfounded allegation that he lied during testimony, involve Detective Boruchowitz's poor character that would not be admissible. (*Id*. at 7.)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997); *Earp v. Davis*, 881 F.3d 1135, 1142 (9th Cir. 2018). However, Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." To determine whether a petitioner has established "good cause" for discovery, the court identifies the essential elements of the substantive claim and analyzes whether "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate" entitlement to relief. *Bracy*, 520 U.S. at 908–09; *Roseberry v. Ryan*, 289 F. Supp. 3d 1029, 1034 (D. Ariz. 2018).

The Ninth Circuit has admonished courts not to permit a "fishing expedition" in habeas discovery. *Earp v. Davis*, 881 F.3d at 1144 (affirming district court's denial of further discovery where petitioner's allegations were "too attenuated and too speculative" to make a plausible showing); *Calderon v. U.S. Dist. Court for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts should not allow prisoners to use federal discovery for fishing expeditions to investigate mere speculation."). "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause" for habeas discovery. *Strickler v. Greene*, 527 U.S. 263, 286 (1999).

Having reviewed Ground 1 allegations and supporting material submitted with his discovery motion, the Court does not find that Garza has established good cause or that the discovery that Garza seeks will assist him in demonstrating that he is entitled to relief. To succeed on his claim, Garza must demonstrate a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Although Garza has set forth a set of factual allegations relating to Detective Boruchowitz's misconduct, he offers only speculation as to how impeaching Detective Boruchowitz's testimony would have changed the result of the proceeding. The Court recognizes the potential for the discovery of impeachment evidence in the partial file that Gibson has possession of, however, the Court has already determined that Garza nonetheless cannot establish plausible materiality under *Brady* demonstrating entitlement to relief. Therefore, Garza has not shown good cause for discovery and the Court denies his motion for discovery.

### c.  Ground 3

In Ground 3, Garza alleges three subclaims of ineffective assistance of trial counsel. (ECF No. 40 at 12-16.) He argues that the Nevada Court of Appeals' decision denying habeas relief on post-conviction appeal is not entitled to AEDPA deference because it applied an incorrect standard of the prejudice prong under *Strickland*. (ECF No. 66 at 12.) To demonstrate prejudice under *Strickland*, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. Garza contends that although the state appellate court articulated

the correct standard under *Strickland*, it incorrectly applied a higher standard for Grounds 3(a)-(c) by requiring a showing that the "outcome of the trial would have been different" when conducting its analysis. (ECF No. 66 at 12-13.)

The Nevada Court of Appeals set forth the standard as follows:

> To establish ineffective assistance of trial counsel, a petitioner must demonstrate counsel's performance was deficient because it fell below an objective standard of reasonableness, and resulting prejudice in that there is a reasonable probability, but for counsel's errors, the outcome of the proceedings would be different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

(ECF No. 22-25 at 4.)

As explained by the United States Supreme Court, AEDPA requires that "state-court decisions be given the benefit of the doubt." *See Woodford v. Visciotti*, 537 U.S. 19, 23–24 (2002) (per curiam). "Readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Id.* The Nevada appellate court's citation to *Strickland* is sufficient to show that it applied the correct prejudice standard, even if the "reasonable probability" language was omitted from its analysis. *Id. See also Mann v. Ryan*, 828 F.3d 1143, 1152-57 (9th Cir. 2016). In addition, the Nevada appellate court in its analysis cited to *Means v. State*, 120 Nev. 1001, 1012-13, 103 P.3d 25, 33 (2004), which further articulates the "reasonable probability" language of the prejudice prong of *Strickland*. (ECF No. 22-25 at 4-5.) At worst, the Nevada Court of Appeals' statements were ambiguous, which is insufficient to find that the court clearly misapplied established federal law. *See Mann*, 828 F.3d at 1157.

### i. Ground 3(a)

In Ground 3(a), Garza alleges that trial counsel rendered ineffective assistance for failure to interview a witness, Mike Reich ("Reich"). (ECF No. 40 at 12-13.) He asserts that the State argued that Garza sat outside to ambush the police whereas Garza and Lujan testified that Garza sat outside waiting for a friend to pick him up. (*Id.*) Trial counsel failed to interview Reich, who arrived at Garza's residence with the intention of picking him up. (*Id.*) Garza asserts that trial counsel's failure to present Reich as a witness was prejudicial because it affected his credibility with the jury and the entire trial turned on which side the jury believed. (*Id.*)

The Nevada Court of Appeals held:

Garza claimed trial counsel was ineffective for failing to interview Mike Reich. He asserted Reich's testimony would have bolstered his self-defense claim by showing that he was waiting outside for a friend and not lying in wait for the law enforcement officers as the State had argued. However, he has not explained how waiting outside for a friend demonstrates he was acting in self-defense when he shot at the law enforcement officers; therefore, he has not alleged specific facts that demonstrate the outcome of the trial would have been different if Reich had testified and he was not entitled to relief on this claim. *See Means v. State*, 120 Nev. 1001, 1012-13, 103 P. 3d 25, 33 (2004) (petitioner bears the burden of proving ineffective assistance of counsel).

(ECF No. 22-25 at 4-5.) The Nevada Court of Appeals' rejection of Garza's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of the prejudice prong of *Strickland*.

Garza failed to demonstrate that, but for counsel's failure to interview Reich, there is a reasonable probability that the outcome of the trial would have been different. Lujan testified that Garza was waiting outside for a ride from a friend and that she had called Reich to pick up Garza. (ECF No. 20-20 at 50-51.) Garza also testified that Lujan called Reich to pick him up. (*Id*. at 136.) At closing, trial counsel highlighted that Garza sat outside waiting for a friend. (ECF No. 20-22 at 81.) Trial counsel elicited testimony and emphasized at closing that Garza was not sitting outside to ambush police officers but was waiting for a friend to pick him up. Accordingly, the fact that Garza was waiting for a ride from a friend was presented to the jury. As noted by the Nevada Court of Appeals, Garza argued at trial that he acted in self-defense. Garza failed to show a reasonable probability that if trial counsel interviewed and called Reich to testify to corroborate testimony that Garza was waiting for a ride, his self-defense argument would have been successful or that the result of the proceeding would have been different. Ground 3(a) is denied habeas relief.

### ii. Ground 3(b)

In Ground 3(b), Garza alleges that trial counsel rendered ineffective assistance for failure to prepare for cross-examination of the State's expert. (ECF No. 40 at 14.) He asserts that trial counsel declined to review the expert report and failed to cross-examine the expert on topics, including the expert's knowledge as to Officer Danneker's obstructed view, whether Garza's compliance was "feigned," and that Garza "reassessed" the situation. (*Id*.) The Nevada Court of Appeals held:

Garza claimed trial counsel was ineffective for declining copies of notes and reports

prepared by the State's expert witness. He asserted "[i]t is clearly axiomatic that to properly cross-examine an expert witness, counsel must be armed with the expert's reports." However, he has not shown that trial counsel was unprepared for his cross-examination of the State's expert witness; therefore, he has failed to allege specific facts that demonstrate the outcome of the trial would have been different if trial counsel had accepted the expert witness' documents and he was not entitled to relief on this claim. *See id.*

(ECF No. 22-25 at 5.) The Nevada Court of Appeals' rejection of Garza's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

During a motion hearing in which defense counsel requested that the state trial court preclude the expert from testifying based on the exclusionary rule, trial counsel asserted that an expert report did not exist. (ECF No. 20-17 at 198-202.) The prosecution clarified that he asked defense counsel if defense counsel wanted the expert to prepare a report, and that defense counsel declined. (ECF No. 20-17 at 202.) During cross-examination, defense counsel highlighted that the expert was paid for his testimony and has only previously worked with states and police officers to demonstrate bias. (ECF No. 20-19 at 195.) At the post-conviction evidentiary hearing, trial counsel testified that he "recall[ed] destroying [the expert] on the stand in cross-examination," and that he "definitely had my best cross-examination in 20 years as an attorney." (ECF No. 22-13 at 23.)

Garza failed to demonstrate resulting prejudice from trial counsel's decision to decline an expert report in preparation for cross-examination. On cross-examination, trial counsel strategically elicited testimony to demonstrate the expert's bias towards law enforcement. (ECF No. 20-19 at 195.) Beyond listing questions regarding the expert's basis of knowledge that trial counsel could have asked on cross-examination, Garza does not establish how eliciting such testimony would have been favorable to the defense. Garza failed to demonstrate that had trial counsel reviewed an expert report in preparation for cross-examination that there was a reasonable probability of a different verdict. Ground 3(b) is denied habeas relief.

### iii.   Ground 3(c)

In Ground 3(c), Garza alleges that trial counsel rendered ineffective assistance for failure to obtain Garza's medical records prior to trial and for erroneously stipulating to them. (ECF No. 40 at 15-16.) He asserts that at trial Garza testified that he was shot in the stomach and the State

presented medical records to show Garza was shot in the hip. (*Id*.) The State then argued that the

jury may disregard Garza's testimony if they found he was lying about any fact. (*Id*.) Garza argues

that trial counsel's failure to review Garza's medical records affected Garza's credibility before

the jury. (*Id*.) The Nevada Court of Appeals held:

> Garza claimed counsel was ineffective for failing to procure his medical records in
> a timely manner, erroneously stipulating to them, and not interviewing the surgeon.
> He asserted the medical records and the surgeon's testimony would have supported
> his self-defense claim and bolstered his credibility by showing he was shot in the
> stomach and not the hip as the State had argued. However, he has not shown that
> information contained in his medical records and obtained from the surgeon would
> have proven he was shot in the stomach; therefore, he has failed to allege specific
> facts that demonstrate the outcome of the trial would have been different if trial
> counsel had further investigated his medical history and he was not entitled to relief
> on this claim. *See id*.

(ECF No. 22-25 at 5-6.) The Nevada Court of Appeals' rejection of Garza's ineffective assistance

claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The state appellate court reasonably determined that Garza failed to demonstrate that, but

for counsel's failure to obtain medical records prior to trial and for erroneously stipulating to them,

there was a reasonable probability that the outcome of the trial would have been different. At the

evidentiary hearing, trial counsel testified that he did not recall if he reviewed the medical records

with Garza and further testified that trial counsel discussed Garza's wounds and the amount of

times Garza was shot with Garza. (ECF No. 22-13 at 28.) Further, at closing, trial counsel referred

to the medical records highlighting that Garza had "powder wounds" on his hip to corroborate that

Garza was shooting into the ground. (ECF No. 20-22 at 93.) Trial counsel also highlighted to the

jury references in the medical records to gunshot wounds to Garza's abdomen. (*Id*. at 94.) Garza

fails to establish how trial counsel could have presented the medical records differently. Garza

fails to present a basis on which trial counsel could have reasonably challenged the admission of

his medical records. Accordingly, Garza is denied habeas relief as to Ground 3(c).

### iv.   Ground 3(d)

In Ground 3(d), Garza alleges that trial counsel rendered ineffective assistance for failure

to attempt to admit Lujan's notes at trial. (ECF No. 40 at 16-17.) Lujan testified that she wrote

down an account of the incident on the day that it happened and that her notes were at her home.

(*Id*.)  The trial court granted the State's request to allow investigators to accompany Lujan to her home to retrieve her notes. (*Id*.)  Garza asserts that Lujan's notes were a contemporaneous account of the event and corroborated her and Garza's testimony, but trial counsel failed to attempt to admit the notes at trial. (*Id*.)  The Nevada Court of Appeals held:

> Garza also claimed trial counsel was ineffective for failing to provide Janice Lujan's notes to the jury after the prosecutor implied she was lying; . . . He further asserted that trial counsel had a conflict of interest.  However, these claims were nothing more than bare allegations and therefore he was not entitled to relief. *See Hargrove v. State*, 100 Nev. at 502-03, 686 P.2d at 225.

(ECF No. 22-25 at 6.)  The Nevada Court of Appeals' rejection of Garza's ineffective assistance claim was neither contrary to nor an objectively unreasonable application of *Strickland*.

The state appellate court reasonably determined that Garza failed to show that his trial counsel was deficient and, but for trial counsel's failure to present Lujan's notes to the jury, the result of the proceeding would have been different.  Garza failed to present and the record does not reveal facts that would establish that he is entitled to relief on those grounds.  Garza has not sufficiently demonstrated that trial counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 694.  An attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id*. at 691.  *See Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) ("[E]ven if there is reason to think that counsel's conduct 'was far from exemplary,' a court still may not grant relief if '[t]he record does not reveal' that counsel took an approach that no competent lawyer would have chosen.")  Garza is denied habeas relief as to Ground 3(d).

### d.  Ground 4(a)

In Ground 4(a), Garza alleges that the State committed prosecutorial misconduct when it suggested to the jury that Garza would sue for millions of dollars if acquitted in violation of Garza's right to a fair trial. (ECF No. 40 at 18-19.)  During re-direct examination, the prosecution asked its expert the following question: "[a]nd an unflattering opinion to the police, could result in a verdict against law enforcement in a civil suit for million [sic] of dollars?" (ECF No. 20-19 at 204.)  The defense objected and in the presence of the jury, the prosecution explained, ". . . I'm seeking to rehabilitate that reputation by saying, you also tell people you lose, and that could result

in a loss of millions of dollars." (*Id*. at 205.)  After another objection, the defense moved for a mistrial. (*Id*. at 206.)

Garza asserts that the State committed prosecutorial misconduct by implying that if the jury found Garza not guilty, he would sue and potentially recover a large monetary settlement. (ECF No. 40 at 19.)  He contends that the prosecution's inflammatory statements deprived Garza of a fair trial and created an unacceptable risk of biased jury deliberation. (*Id*.)  On direct appeal, the Nevada Supreme Court held:

> Garza's sole contention on appeal is that the district court erred in denying his motion for a mistrial based on the State's comment suggesting that a verdict in his favor would expose the county to a large tort settlement deprived him of a fair trial. We discern no abuse of discretion. *See Rose v. State*, 123 Nev. 194, 206-07, 163 P.3d 408, 417 (2007) (reviewing decision to deny motion for mistrial for abuse of discretion). In response to the brief comment by the State and the defense's objection, the district court instructed the jury to disregard the State's comment. The jurors were later instructed that the statements of counsel that were not supported by the evidence must not be considered. Considering these instructions and the evidence at trial, we cannot conclude that the prosecutor's statements "so infect[ed] the proceedings with unfairness as to make the results [of the trial] a denial of due process." *Browning v. State*, 124 Nev. 517, 533, 188 P.3d 60, 72 (2008) (internal quotation marks omitted); *cf. Witherow v. State*, 104 Nev. 721, 724-25, 765 P.2d 1153, 1155-56 (1988) (recognizing that an improper statement may be harmless if the verdict would have been the same absent the statement).

(ECF No. 21-13 at 2-3.) The Nevada Supreme Court's rejection of Garza's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

Prosecutorial misconduct warrants federal habeas relief if the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and internal quotation marks omitted).  A defendant's constitutional right to due process of law is violated if the prosecutor's misconduct renders a trial "fundamentally unfair." *Id*. at 181–83; *see also Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor").  Claims of prosecutorial misconduct are reviewed "on the merits, examining the entire proceedings to determine whether the prosecutor's [actions] so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995)

(citation and internal quotation marks omitted); *see also Greer v. Miller*, 483 U.S. 756, 765 (1987); *Turner v. Calderon*, 281 F.3d 851, 868 (9th Cir. 2002).  The fairness of a trial is measured "by considering, inter alia, (1) whether the prosecutor's comments manipulated or misstated the evidence; (2) whether the trial court gave a curative instruction; and (3) the weight of the evidence against the accused." *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005) (citing *Darden*, 477 U.S. at 181-82.)

Here, the prosecution's statements were made in response to the defense's line of questioning regarding the expert's potential bias in favor of law enforcement. The prosecution attempted to rehabilitate the expert by eliciting testimony that the expert has given information to other clients that their position has no value and that they are in a losing position in a lawsuit. (ECF No. 20-19 at 207.)  The prosecution's comment did not manipulate or misstate evidence specific to Garza's trial.  In addition, the trial court provided the following curative instruction:

> I'm going to instruct you as the judge that you should disregard that statement. You shouldn't discuss it during deliberations. I'm not going to strike it from the record, because it should be there for the record. But you should be aware that that statement should not have been said. And the reasons for that is because this is not a civil suit, and there is no civil suit filed, and millions of dollars are not at issue.

> . . . this is a criminal matter, and you are to look at the facts and decide whether or not the incident happened and who committed the incident, if it did occur.  And you are to apply the facts to the law and make a decision based solely on those issues, and not let other extraneous issues influence your deliberation.

(ECF No. 20-19 at 221-22.)

The state trial court sustained the defense's objection and gave a timely curative instruction to the jury. (ECF No. 20-19 at 211.)  In addition, the state trial court instructed the jury not to "consider statements of counsel for either side which are unsupported by the evidence."  (ECF No. 20-21 at 15.)  It is presumed that jurors follow the court's instructions absent extraordinary situations. *Francis v. Franklin*, 471 U.S. 307, 324 (1985).  As considered by the Nevada Supreme Court, the prosecution presented strong evidence through testimony of multiple witnesses against Garza.  The Nevada Supreme Court reasonably concluded that Garza failed to identify statements that could have so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Garza is denied federal habeas relief as to Ground 4(a).

### e.   Grounds 5(a) and 5(b)

In Ground 5(a), Garza alleges that appellate counsel rendered ineffective assistance for failure to argue that the state suppressed exculpatory material under *Brady*. (ECF No. 40 at 21-24.) He asserts that appellate counsel failed to raise on appeal a *Brady* claim arguing that the State did not turn over impeachment material related to Detective Boruchowitz. (*Id*. at 21.)  In Ground 5(b), Garza alleges that appellate counsel rendered ineffective assistance for failure to argue that the State committed prosecutorial misconduct when at closing, the prosecution stated that Garza lied about waiting for his friend to pick him up. (*Id*. at 24.)  He asserts that the prosecution told the jury that Reich never showed up to Garza's house even though Reich was photographed on the scene shortly after the shooting took place. (*Id*.)  He contends that such claims would have been successful on appeal. (*Id*.)  The Nevada Court of Appeals held:

> Garza claimed appellate counsel was ineffective for failing to raise the prosecutorial misconduct and *Brady* claims that he raised in his postconviction habeas petition on direct appeal.  However, he has not shown that the prosecutor . . . intentionally misrepresented evidence during closing argument. *See Valdez v. State*, 124 Nev. 1172, 1188-90, 196 P.3d 465, 476-77 (2008) (discussing proper analysis of prosecutorial misconduct claims).  His dash-camera-recording *Brady* claim lacked merit because the State presented evidence that there was nothing depicted on the recording and it was deleted. *See generally Daniel v. State*, 119 Nev. 498, 520, 78 P.2d 890, 905 (2003) ("Loss or destruction of evidence by the State violates due process 'only if the defendant shows either that the State acted in bad faith or that the defendant suffered undue prejudice and the exculpatory value of the evidence was apparent before it was lost or destroyed.'"). . . . Therefore, he has failed to demonstrate that any of these claims had a reasonable probability of success on appeal and he was not entitled to relief on his claim of ineffective assistance of appellate counsel.

(ECF No. 22-25 at 6-7.) The Nevada Court of Appeals' rejection of Garza's claim was neither contrary to nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court.

To prevail on his ineffective assistance of appellate counsel claim, Garza must show his appellate counsel acted deficiently and "a reasonable probability that, but for his [appellate] counsel's" deficiency, Petitioner "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.

1989).  Effective appellate advocacy requires weeding out weaker issues with less likelihood of success.  The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*

The Nevada Supreme Court reasonably concluded that Garza failed to demonstrate prejudice as to Grounds 5(a) and 5(b).  Appellate counsel did not have a reasonable probability of success on appeal.  *See generally Knowles v. Mirzayance*, 556 U.S. 111 (2009) (the law does not require counsel to raise every available non-frivolous defense).  The Nevada Supreme Court determined that Garza's *Brady* and prosecutorial misconduct claims would have failed based on its interpretation of Nevada state law.  The Nevada Supreme Court, however, reasonably ruled, applying clearly established law as determined by the United States Supreme Court that Garza did not demonstrate a reasonable probability of success on appeal under *Strickland* and *Smith*.

As discussed above, Garza cannot demonstrate a reasonable probability that, had the impeachment evidence of Detective Boruchowitz's misconduct been disclosed to the defense, the result of the proceeding would have been different and, therefore, his *Brady* claim lacks merit.  Garza failed to demonstrate that the prosecution's comments at closing could have so infected the trial with unfairness as to make the resulting conviction a denial of due process, considering the evidence presented through testimony of multiple corroborating witnesses against Garza. *See Darden*, 477 U.S. at 181-82 (analyzing a claim that the prosecutor's argument violated due process by considering the strength of the evidence against the defendant).  Appellate counsel cannot be found to be ineffective for failure to raise issues that lack merit.  The Nevada Court of Appeals' decision that Garza failed to demonstrate that his *Brady* and prosecutorial misconduct claims had a reasonable probability of success on appeal was not unreasonable.  Accordingly, Garza is denied habeas relief as to Grounds 5(a) and 5(b).

## IV.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Garza.  Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA").  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.

*See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).  Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**V.    CONCLUSION**

In accordance with the foregoing, **IT IS THEREFORE ORDERED:**

1. Petitioner Edward Garza's Second Amended Petition for Writ of Habeas Corpus (ECF No. 40) is DENIED.

2. A certificate of appealability is DENIED.

3. Garza's Motion for Discovery (ECF No. 68) is DENIED.

4. The Clerk of the Court is directed to substitute William Hutchings for respondent Brian Williams, enter judgment accordingly, and close this case.

DATED: June 30, 2022

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE